### BELKIN *v.* THERMO-DYNAMICS, INC.

1. CONTRACTS—CORPORATIONS.
   A person selling machinery to a corporation is bound to look to the corporation for performance of the contract, where his contract was with the corporation rather than with the representatives of the corporation.

2. SAME—FLEXIBILITY—PARTIES.
   Contracts are as flexible as the parties design.

3. SAME—CORPORATIONS—SALE OF MACHINERY—SUBJECT TO FINANCING—MOTIVES.
   Contract with corporation for sale of machinery which was "subject to financing" failed when it was determined that financing was unavailable to the corporation, and court may not probe into motives of directors of corporation who refused to cosign on loan.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 19 Am Jur 2d, Corporations § 1341 *et seq.*
[2] 17 Am Jur 2d, Contracts § 75 *et seq.*

Appeal from Ottawa; Smith (Raymond L.), J. Submitted Division 3 April 5, 1966, at Grand Rapids. (Docket No. 1,335.) Decided November 9, 1966. Leave to appeal granted by Supreme Court March 9, 1967. 379 Mich 752, 381 Mich 37.

Complaint by Major M. Belkin, doing business as Major Machinery Co., against Thermo-Dynamics, Inc., a Michigan corporation, to recover a broker's commission for sale of a steel heat treating furnace defendant corporation had offered to purchase "subject to financing." Defendant corporation was unable to purchase the furnace because of inability to get financing. Judgment for plaintiff. Defendant appeals. Reversed and remanded for entry of judgment of no cause of action.

*Cornelius Wiarda,* for plaintiff.

*James W. Bussard,* for defendant.

BURNS, P. J. The defendant manufacturing corporation, through its general manager, made known to the plaintiff industrial machinery broker its desire to purchase a steel heat treating furnace. Plaintiff located such a furnace and after the defendant's board of directors voted to purchase the furnace, the defendant's general manager signed an offer to purchase from plaintiff for $39,500 "subject to financing." On the same day plaintiff contracted to purchase the furnace from its then present owner.

During negotiations both parties treated the transaction as contingent upon defendant obtaining a loan with which to finance the purchase. Plaintiff was informed that because the corporation was in poor financial condition a lending institution would probably require that the corporation's directors personally indorse the necessary loan and that this method of obtaining funds had been used in the past.

After two and one-half months of attempting to secure financing, it appeared that the purchase of the furnace would be possible only if the directors personally agreed to become obligated with the defendant corporation. Shortly thereafter plaintiff was notified that the directors would not agree so to obligate themselves, and therefore the corporation could not purchase the furnace.

The plaintiff returned the furnace to the original owner and commenced this lawsuit for his loss of commission. In his opinion the trial judge, sitting without a jury, said:

"Plaintiff had a right to rely on defendant using its usual method and only effective method of financing in fulfilling its obligation under this contract."

We disagree.

There is only one written contract which has been brought to our attention. The parties to that agreement were the plaintiff and the defendant. There was no written or oral promise given to plaintiff by the directors or their agents that they would personally indorse the papers necessary to finance the purchase of the furnace. When a person selling machinery to a corporation concludes his contract with the corporation rather than with the representatives of the corporation, the seller is bound to look to the corporation for performance on the contract. *Whitney* v. *Wyman* (1879), 101 US 392 (25 L ed 1050).

It is noted with interest, however, that a former stockholder and director testified that lack of financing was not the cause of the corporation's failure to purchase the furnace, but that the true reason was the loss of a major customer for the product of the furnace. It was at this time that the board of directors decided they would not personally indorse the note.

This may well have been the motive for the directors' refusal to cosign, but we are not interested in exploring the motives of every director who chooses not to obligate himself with his corporation. In our opinion authorizing such a probe into the mind of a person not a party to a contract would establish a bad precedent.

Plaintiff was aware of the defendant's precarious financial condition, and he should have protected himself from the adverse operation of the condition "subject to financing." Contracts are as flexible as the parties design. It is undisputed that the contract in question was "subject to financing" and that financing was unavailable to the contracting corporation without the personal aid of its directors.

The judgment of the trial court is reversed and the cause remanded for entry of judgment of no cause of action. Costs to appellant.

FITZGERALD, J., concurred.

Although the late Judge WATTS heard oral arguments on this case he took no part in the opinion which was prepared after his death.