BELKIN *v.* THERMO DYNAMICS, INC.

DECISION OF THE COURT.

1. BROKERS—COMMISSIONS.

Trial court's judgment for plaintiff broker in his action against corporation to recover commission on sale of used machinery to the corporation is affirmed.

SEPARATE OPINION.

SOURIS and T. E. BRENNAN, JJ.

2. CONTRACTS—CORPORATIONS—FINANCING—INDORSEMENT BY DIRECTORS.

*Agreement of corporation to purchase machinery "subject to financing," held, binding as a contract of the corporation even though financing could not be obtained because directors of the corporation refused to indorse the corporation's notes, where the parties intended the phrase "subject to financing" to mean "by our usual method of financing, including indorsement by directors, if necessary".*

3. CORPORATIONS—CONTRACTS—DIRECTORS.

*A corporation is liable on its promise that its directors will indorse notes to secure financing for a purchase.*

4. SAME—CONTRACTS—DIRECTORS.

*A corporation can promise individual action by directors and will be liable if directors do not perform the promised act.*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur 2d, Brokers § 157 *et seq.*
[2] 19 Am Jur 2d, Corporations § 980 *et seq.*
[3] 19 Am Jur 2d, Corporations § 1271 *et seq.*
[4–7] 19 Am Jur 2d, Corporations § 1034 *et seq.*
[8–10] 19 Am Jur 2d, Corporations § 1341 *et seq.*
[11] 17 Am Jur 2d, Contracts § 240 *et seq.*

5. CONTRACTS—WORDS AND PHRASES—SUBJECT TO FINANCING.

Finding of trial court that phrase "subject to financing", used
in written contract by which defendant corporation agreed
to purchase machinery "subject to financing", was intended
by the parties to mean "our usual method of financing, in-
cluding indorsement by the directors, if necessary", is not
disturbed by an appellate court.

DISSENTING OPINION.
DETHMERS, C. J., and O'HARA, J.

6. CONTRACTS—CORPORATIONS—FINANCING.

Agreement by corporation to purchase machinery "subject to
financing" was not binding on corporation where there was
no evidence to support a finding and no finding was made
that financing was available to the corporation from any source
without the signatures of the directors.

7. CORPORATIONS—CONTRACTS—FINANCING—DIRECTORS.

Corporation cannot be held liable for failure of directors to
sign personal notes for financing, absent a specific finding that
the corporation promised that its directors would sign, even
if the contracting parties assumed or thought that the directors
would sign.

8. SAME—CONTRACTS—DIRECTORS—FINANCING.

Agreement by corporation approved by its board of directors is
not the agreement of its individual directors and no contradic-
tory, inconsistent, or deceitful action can be ascribed to the
corporation if the individual directors refuse to sign notes
personally for financing purchase made on agreement "subject
to financing."

9. SAME—CONTRACTS—FINANCING.

Directors' refusal to sign personal notes for corporation which
agreed to make purchase "subject to financing" is not an act
of the corporation which would support a finding that it
caused its own failure to obtain financing or failed to do what
it reasonably could or should have done to obtain financing.

10. CONTRACTS—CORPORATIONS—DIRECTORS.

Judgment in favor of defendant corporation which had agreed
to purchase machinery "subject to financing" is affirmed, where
financing was unavailable and where there was no evidence or
finding that the directors ever promised to assume a personal

*obligation, that they were in any way obligated to do so, or that plaintiff and defendant corporation could have required them to do so.*

11. SAME—CORPORATIONS.

*Court cannot alter contract by reading out the phrase "subject to financing" and when financing is unavailable to a corporation without personal signatures of directors, who are not obligated to sign, the corporation is not obligated to perform.*

Appeal from Court of Appeals, Division 3, Burns, P. J., and Fitzgerald and Watts, JJ., reversing Ottawa, Smith (Raymond L.), J. Submitted January 9, 1968. (Calendar No. 1, Docket No. 51,651.) Decided June 10, 1968.

5 Mich App 53, reversed.

Complaint by Major M. Belkin against Thermo Dynamics, Inc., a Michigan corporation, for broker's commission upon contract to purchase heat treating furnace. Judgment for plaintiff reversed in Court of Appeals. Plaintiff appeals. Reversed, and circuit court judgment for plaintiff affirmed.

*Cornelius Wiarda,* for plaintiff.

*James W. Bussard,* for defendant.

T. E. BRENNAN, J. This action by a machinery broker plaintiff was brought to recover a commission on the sale of used machinery to the defendant corporation.

Defendant concededly entered into a written contract which provided that its obligation to purchase the machine was "subject to financing." The trial court found that the parties intended by this phrase to mean that the purchase of the machine would be accomplished with the aid of the personal indorse-

ment of the directors of the defendant corporation, if necessary.

The Court of Appeals reversed (5 Mich App 53), holding that:

"There was no written or oral promise given to plaintiff by the directors or their agents that they would personally indorse the papers necessary to finance the purchase of the furnace. When a person selling machinery to a corporation concludes his contract with the corporation rather than with the representatives of the corporation, the seller is bound to look to the corporation for performance on the contract. *Whitney* v. *Wyman* (1879), 101 US 392 (25 L Ed 1050)."

The principles of law thus noted by the Court of Appeals are correct, but they are inapplicable. This action is not against the directors; there is no attempt to hold them personally liable for the broker's commission. The trial court found that the corporation promised to buy the machine, and that the words "subject to financing" were intended by the parties to mean "our usual method of financing, including indorsement by the directors, if necessary."

A can promise B that C will do something. If A is not C's agent, C will not be bound to do it. But nonperformance by C will be a breach of contract by A. This is the typical situation of an agent's liability upon implied warranty of authority.

So, it was possible for defendant corporation to promise plaintiff that its directors would indorse notes for the furnace, if that step was necessary to secure financing for the purchase of it.

The trial court found that the contract was ambiguous on this point, but that this was the true intention of the parties.

This factual determination by the trial judge, who observed the demeanor of the witnesses, should not have been disturbed by the Court of Appeals.

The Court of Appeals is reversed, and the judgment of the circuit court is affirmed. Costs to appellant.

SOURIS, J., concurred with T. E. BRENNAN, J.

KELLY, BLACK, T. M. KAVANAGH, and ADAMS, JJ., concurred in result.

DETHMERS, C. J. (*dissenting*). The facts in this case are adequately stated in the opinion of the Court of Appeals (5 Mich App 53) and that of Mr. Justice T. E. BRENNAN here. With the decision in the latter I am not in accord.

Plaintiff stresses that the trial court, in its opinion, made certain findings of fact; that, when supported by competent evidence, they ought not to be set aside by an appellate court; and that those findings compel, so plaintiff says, a decision for him. Those findings are: (1) that plaintiff was informed by defendant, before procuring the furnace for it, that defendant corporation had been obtaining financing in the past through giving its corporate notes indorsed by its directors, (2) that plaintiff had a right to rely on defendant using that method of financing in this transaction, and, finally, (3) that "defendant could have financed the deal had it wished to do so". It is evident, from the context and wording of the entire opinion, however, that, by the quoted language, the trial court meant and was saying that it found that defendant could have financed the deal if its directors had been willing to indorse notes for that purpose. Although plaintiff points to testimony suggesting possibilities of obtaining financing for defendant from sources other than its usual banking connections, there is no evidence to support a finding, nor was one made, that financing was available to defendant from any

source without the signatures of the directors. That leaves us, then, where we would have been without the mentioned trial court finding of fact, namely, confronted with the necessity of determining the legal question of whether defendant is liable to plaintiff for a commission when it could not of itself have financed the deal without the directors' voluntary, personal accommodation. Hence, affirmance of the holding of the Court of Appeals and consequent reversal of the trial court judgment does not involve substituting our opinion as to the facts for that of the trial court. And so there was not, as suggested by Mr. Justice T. E. Brennan, a disturbing by the Court of Appeals of a factual determination by the trial judge.

I agree with Mr. Justice T. E. Brennan that the Court of Appeals' reference to the rule announced in *Whitney* v. *Wyman* (1880), 101 US 392 (25 L Ed 1050), that one who concludes a contract with a corporation can look only to it and not its officers or representatives for performance, has no particular application here as this action is against the corporation only and not its directors. At the same time, I consider equally inapt his analogy that when A promises B that C will do something, if A is not C's agent, C is not bound to do it, but, upon failure, A becomes liable for breach of his promise. Here, even if plaintiff and defendant both thought, at the time of making the contract, that the directors would do so, and even if the trial court thought and found that that was what they both thought, the trial court did not find, the testimony does not show, and plaintiff, in his brief, does not claim that defendant corporation promised plaintiff that its directors would sign promissory notes for defendant to secure financing for the purchase. That leaves the A, B, C analogy out in the cold.

A difficulty here seems to be that plaintiff, and possibly the trial court, were confused by the fact that the corporation's agreement to purchase was based on approval by the board of directors as such, and that the members thereof were the same persons who refused to sign notes. That identity of persons does not make the refusal to sign an act of the corporation. It was that of the directors as persons, not that of the corporation board of directors. Therefore, no contradictory or inconsistent or deceitful action by the corporation defendant can be ascribed thereto.

Plaintiff urges that when nonoccurrence of a condition is attributable to defendant itself, it cannot be pleaded by defendant as a defense to its contract liability. The trial court did not find as a fact nor is there any evidence to support a finding of fact that defendant corporation itself caused its failure to obtain financing or failed to do what it reasonably could or should have done to get it. It is true that the trial court said that the law should not allow defendant to sidestep its obligation by resorting to such tactics. Evidently reference was to the action or nonaction of the directors in refusing to assume a personal obligation. That was not a tactic of the corporation. There is no evidence to show nor did the trial court find that the directors ever promised to sign notes, that they were in any way obligated to do so, or that either plaintiff or defendant corporation could have required them to do so.

The deal between plaintiff and defendant corporation was "subject to financing." The court may not read this out of the contract. The financing, without signature of the directors, who were not obligated to sign, was unavailable to defendant. Under the express language of the contract defendant was not obligated to take the furnace, pay for it, or pay plaintiff a commission.

The decision of the Court of Appeals should be affirmed and the trial court judgment reversed, with costs to defendant.

O'HARA, J., concurred with DETHMERS, C. J.