*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHOWER CURTAIN SOLUTIONS LIMITED, LLC,

        Plaintiff-Cross-Appellant/Cross-Appellee,

v

FIRST AMERICAN TITLE INSURANCE COMPANY,

        Defendant-Cross-Appellee,

and

SEAVER TITLE AGENCY, LLC,

        Defendant-Cross-Appellee/Cross-Appellant,

and

WILLYS OVERLAND LOFTS LIMITED DIVIDEND HOUSING ASSOCIATION, LLC, WILLYS OVERLAND, LLC, WILLYS OVERLAND COMMERCIAL, LLC, and WILLYS OVERLAND LOFTS ASSOCIATION.

        Defendants.

UNPUBLISHED
June 18, 2020

No. 346549
Wayne Circuit Court
LC No. 17-016515-CB

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

PER CURIAM.

Shower Curtain Solutions Limited, LLC (SCSL) purchased property separated from property owned by Willys Overland Lofts Association (the Association) by an alley that was

previously owned by the city of Detroit. When SCSL took possession, it discovered that the Association had fenced off the entire alley. After paying $100,000 to secure an easement, SCSL filed suit against the Association to quiet title to the northern half of the alley. The circuit court granted summary disposition in SCSL's favor. That ruling is not at issue on appeal.

At issue in SCSL's cross-appeal is the circuit court's summary dismissal of SCSL's breach of contract and tort claims against its title insurance provider—First American Title Insurance Company—and its title insurance agent—Seaver Title Agency, LLC—in First American's and Seaver's favor. At issue in Seaver's cross-appeal is the circuit court's denial of the agent's request for attorney fees based on SCSL's frivolous action against it. We affirm the circuit court's summary dismissal of SCSL's claims, but reverse the order denying Seaver's sanctions request and remand for further consideration of that issue.

## I. BACKGROUND

In 2015, SCSL purchased property located at 441 W. Canfield in Detroit. 441 W. Canfield was separated from neighboring loft property owned by the Association by an alley that was vacated by the city in 2007:



After taking possession, SCSL discovered that the Association claimed ownership over the entire alley, precluding SCSL any access. Unaware of the city's vacation of the alley, SCSL entered into an agreement to secure an easement over the alley in exchange for $100,000. After learning of the city's vacation of the alley, SCSL claimed fee ownership of the northern half of the alley by operation of law.

SCSL filed a three-count complaint alleging (1) breach of contract against First American and Seaver, (2) negligent misrepresentation against First American and Seaver, and (3) quiet title against the Association and its parent companies. The circuit court granted summary disposition to SCSL on its quiet title claim. SCSL now holds fee title to the northern half of the alley. The Association has not appealed that ruling.

However, the circuit court summarily dismissed SCSL's breach of contract and tort claims against First American and Seaver. The court found that the title insurance contract did not cover the scenario presented in this case. And, the court ruled, Michigan law did not permit tort actions against title insurers. SCSL appeals those decisions. Seaver then sought sanctions against SCSL, asserting that the claims against it were frivolous. The court denied that request and Seaver now appeals as well.

## II. SUMMARY DISPOSITION

We review de novo a circuit court's decision on a motion for summary disposition. *Gyarmati v Bielfield*, 245 Mich App 602, 604; 629 NW2d 93 (2001).

> Summary disposition is proper under MCR 2.116(C)(8) if the nonmoving party has failed to state a claim on which relief can be granted. Such claims must be so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. In reviewing the outcome of a motion under MCR 2.116(C)(8), we consider the pleadings alone. We accept the factual allegations in the complaint as true and construe them in a light most favorable to the nonmoving party. [*Kuznar v Raksha Corp*, 481 Mich 169, 176; 750 NW2d 121 (2008) (quotation marks and citations omitted).]

### A. NEGLIGENT MISREPRESENTATION

"A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Fejedelem v Kasco*, 269 Mich App 499, 502; 711 NW2d 436 (2006). SCSL asserted that defendants committed negligent representation by implying that the alley adjacent to 441 W. Canfield was owned by the Association. The circuit court relied on *Mickam v Joseph Louis Palace Trust*, 849 F Supp 516 (ED Mich, 1993), and *Wormsbacher v Seaver Title Co, Inc*, 284 Mich App 1; 772 NW2d 827 (2009), to rule that claims against a title insurer and its agents are governed by contract, not tort. The circuit court correctly determined that a plaintiff may not sustain such a *tort* action against a title insurance agent such as Seaver or a title insurer like First American.

In *Mickam*, 849 F Supp 516, 518 (ED Mich, 1993), the plaintiffs brought suit in tort against the defendant title insurance agent. After purchasing property from the sellers, the buyers learned that the property was encumbered by federal and state tax liens. *Id*. at 519. The buyers then sued the title insurance agent for negligence. The federal district court noted that title *abstractors* "who negligently performs a title search" can be held liable under Michigan law. *Id*. at 521, citing *Williams v Polgar*, 391 Mich 6; 215 NW2d 149 (1974). But, the court noted, "no Michigan court has held that a title insurer or agent has a professional duty of care to those who employ them, outside of their contractual obligations." *Mickam*, 849 F Supp at 521.

The *Mickam* court recognized that "[c]ourts in other jurisdictions are split on whether or not a title insurer or agent can be liable in negligence like an abstracter." *Id*. But the court found "more persuasive" those jurisdictions limiting the insurer's and agent's duty to contract. *Id*.

> As in other states, parties in Michigan generally purchase title insurance, rather than relying on an abstract, because they prefer the certainty of insurance. In purchasing insurance, a buyer acquires a contractual right against the insurer for coverage of title defects. In purchasing an abstract, a buyer merely obtains an examination of title. With an abstract, a real estate buyer can obtain damages for title defects only through tort litigation. To protect the rights and expectations of the parties, a title insurer *should be liable in accordance with the terms of the title*

*policy only* and *should not be liable in tort*. To hold otherwise does violence to the whole concept of insurance. [*Id*. at 521-522 (emphasis added).]

In *Wormsbacher v Seaver Title Co, Inc*, 284 Mich App 1, 7; 772 NW2d 827 (2009), this Court found *Mickam* persuasive and adopted its reasoning. The Court noted that, unlike some jurisdictions, "Michigan distinguishes between title insurers and abstractors," with each fulfilling distinct roles. *Id*. While abstractors could be held liable in tort, title insurers could not. *Id*. at 8.

*Mickam* and *Wormsbacher* could not be clearer—an injured party must rely on its title insurance contract to bring suit against its title insurer or the insurer's agent; there can be no action in tort. SCSL's arguments to the contrary and attempts to distinguish this case from *Mickam* and *Wormsbacher* are unavailing. Accordingly, the circuit court properly dismissed SCSL's negligent misrepresentation claim.

## B. BREACH OF CONTRACT

SCSL further challenges the circuit court's summary dismissal of its contractual claims against First American and Seaver. In dismissing the claim in defendants' favor, the court first ruled that a breach of contract action could not stand against Seaver because it was not a party to the title insurance company. In relation to American Title, the court stated:

When I look at the contract here I go to follow what the contract says . . . .

. . . and what American Title was insuring they were not insuring the alley.

The circuit court dismissed SCSL's claims in defendants' favor after SCSL filed a summary disposition motion "Summary disposition may be granted in favor of an opposing party under MCR 2.116(I)(2) if there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law." *City of Holland v Consumers Energy Co*, 308 Mich App 675, 681-682; 866 NW2d 871 (2015), aff'd *City of Coldwater v Consumers Energy Co*, 500 Mich 158 (2017). This issue also involves the interpretation of a contract, which is a question of law that we review de novo. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

A plaintiff claiming a breach of contract must prove "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014).

### 1. DEFENDANT SEAVER

Summary disposition was warranted in Seaver's favor. In *Mickam*, the plaintiff claimed that the defendant title agent was liable under the title insurance policy. The court found the claim "meritless" because the defendant was not the insurer under the policy. The court distinguished that the defendant was an agent for the insurer and that, under Michigan law, "an agent is not liable for the contracts it makes on behalf of a disclosed principle [sic]." *Mickam* 949 F Supp at 520.

-4-

*Mickam* relied upon *Hall v Encyclopedia Britannica, Inc*, 325 Mich 35; 37 NW2d 702 (1949), and *Huizenga v Withey Sheppard Assoc*, 15 Mich App 628; 167 NW2d 120 (1969), in support of its conclusion. In *Hall*, 325 Mich at 38, quoting *Whitney v Wyman*, 101 US 392; 25 L Ed 1050 (1879), our Supreme Court held that " '[w]hen the principal is disclosed, and the agent is known to be acting as such, the latter cannot be made personally liable unless he agreed to be so.' " And in *Huizenga*, 15 Mich App at 633, this Court stated, "It is a well accepted rule that where the principal is disclosed and the agent is known to be acting as such, the agent cannot be made personally liable unless he agreed to become personally liable." This Court more recently reiterated that "an agent who contracts with a third party on behalf of a disclosed principal is generally not liable to the third party in the absence of an express agreement to be held liable."[1] *Howard & Howard Attorneys, PLLC v Jabbour*, 311 Mich App 524, 526; 880 NW2d 1 (2015).

Ultimately, if Seaver had acted as First American's agent, it could not be liable under the policy. SCSL effectively ignores this aspect of the issue and instead relies on inapplicable caselaw when cursorily stating that Seaver is liable as the agent that countersigned the policy. Rather, Seaver Title Agency is mentioned only once in the policy and that is as countersignatory in Schedule A.

On the insurance policy at issue, Seaver's name appears only one time; on Schedule A of the policy, "SEAVER TITLE AGENCY" is listed as countersigning that document. The policy identifies First American as the sole insurer. The act of countersigning the policy does not demonstrate an express intent by Seaver to also be held liable on the contract. Therefore, under well-established law, Seaver, as an agent of the disclosed insurer, cannot be held liable under the contract.

## 2. DEFENDANT FIRST AMERICAN

With regard to First American, SCSL argues that it should be able to rely on the bargained-for terms of the insurance contract. That is true. But contrary to SCSL's view, the agreed-upon terms plainly do not include title to the alley.

Relevant to this appeal, the title insurance policy covered loss from "[t]itle being vested other than as stated in Schedule A," as well as:

> 2. Any defect in or lien or encumbrance on the Title. . . .
>
> 3. Unmarketable Title.
>
> 4. No right of access to and from the Land.

---

[1] This is contrary to the situation where an agent contracts for an *undisclosed* principal. In that situation, the agent *is* personally liable for contractual obligations. *Penton Publishing, Inc v Markey*, 212 Mich App 624, 626; 538 NW2d 104 (1995).

The policy defines "Title" as "[t]he estate of interest described in Schedule A" and defines "Land" as the following:

> The land described in Schedule A, and affixed improvements that by law constitute real property. *The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right title, interest, estate, or easement in abutting* streets, roads, avenues, *alleys*, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy. [Emphasis added.]

Schedule A indicates that the policy insures fee title to the property as described in Exhibit A. Exhibit A, in turn, describes the metes and bounds dictating the subject property's boundaries. The subject alley is not included in Exhibit A. The pertinent portion of the description shows that the southern boundary of the property is along the "Northerly line of said 20 foot wide public alley." However, another alley that had been vacated by the city is included in the property's metes and bounds description. Therefore, although the description about the alley being "public" was no longer accurate on account of the 2007 vacation, there is no question that the area contemplated in the policy did not include the subject alley, public or otherwise.

SCSL's claim that the policy must cover *all* of 441 W. Canfield (including the northern half of the subject alley) because it mentions "441 W. Canfield" is misguided. Under a general heading on Schedule A, the policy identifies the area in question as "Commonly Known As: 441 W. Canfield, Detroit, MI 48207." And "[i]t is elementary that upon the vacation of a street or alley the land reverts to the abutting owner or owners." *Mich Central R Co v Miller*, 172 Mich 201, 208; 137 NW 555 (1912); see also MCL 560.227a(2). However, more specific terms in a contract control over general terms. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 367 n 22; 817 NW2d 504 (2012). The more specific provisions of this insurance policy limit the insured property to the metes and bounds described in Exhibit A. And Exhibit A does not include the alley in question.

SCSL avers in its reply brief that "the function of the title company is to give the insured the protection which he reasonably had a right to expect." However, as our Supreme Court has stated, "The rule of reasonable expectations clearly has no application to unambiguous contracts." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 60; 664 NW2d 776 (2003). And that is because "one's alleged 'reasonable expectations' cannot supersede the clear language of a contract." *Id.*; see also *Raska v Farm Bureau Mut Ins Co of Mich*, 412 Mich 355, 362; 314 NW2d 440 (1982) ("[T]he expectation that a contract will be enforceable other than according to its terms surely may not be said to be reasonable.").

Therefore, under the plain terms of the contract, either through its definition of "Land" not including any abutting alleys or through the specific metes and bounds description, the policy did not insure title with regard to the alley in question.

## III. SANCTIONS

Seaver challenges the circuit court's denial of its request for sanctions based on its characterization of SCSL's breach of contract claim against it as frivolous. We review for clear

error a trial court's determination whether an action was frivolous. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. at 661-662.

Seaver argued below that SCSL's breach-of-contract claim against it was devoid of legal merit, and therefore, was frivolous, which required that sanctions be imposed under MCL 600.2591 and MCR 2.114(D).[2] MCL 600.2591(3)(a) provides for sanctions when

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (*iii*) The party's legal position was devoid of arguable legal merit.

MCR 1.109(E)(5)-(6) provides for sanctions when a party or its attorney signs a pleading which is filed for an improper purpose or knowing that it is not "well grounded in fact" or "warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law."

In ruling on Seaver's request, the circuit court merely stated that the issue was not a "slam dunk" and that it only "give[s] sanctions on slam dunks." Although not articulately stated, the court essentially found that SCSL did not bring a frivolous claim. A review of the binding caselaw on this issue reveals that the issue actually was a slam dunk. The longstanding and well-established law is clear that an agent is not liable on a contract when the agent's principal is disclosed. See *Hall*, 325 Mich at 38; *Howard & Howard*, 311 Mich App at 526; *Huizenga*, 15 Mich App at 633; *Mickam* 949 F Supp at 520. That is exactly the situation here. To raise a claim that so contrary to that precedent without citing any ground to overrule that precedent was frivolous. With SCSL offering nothing of substance to show how the binding precedent should not apply, we are left with a definite and firm conviction that the circuit court erred in denying Seaver's request for sanctions.

SCSL relies on the principle that counsel's good-faith efforts to pursue novel or arguable legal theories shields it from sanctions. See *FMB-First Mich Bank*, 232 Mich App at 719 (stating that the framework of MCL 600.2591 and the court rules is to deter parties from advancing frivolous claims "without stifling their good-faith efforts at pursuing novel or arguable legal theories"). But SCSL's reliance on this principle is misplaced. Given the sheer lack of substance behind its responses, a court could not find that SCSL's breach-of-contract claim was made in pursuit of any novel or arguable legal theory.

Accordingly, we affirm the circuit court's grant of summary disposition in Seaver Title Agency's and First American Title Insurance Company's favor, but reverse the ordering denying

---

[2] At the time Seaver filed its request for sanctions, MCR 2.114 was in effect, but shortly thereafter, it was repealed, effective September 1, 2018. The contents of former MCR 2.114 have been relocated to MCR 1.109; specifically, MCR 2.114(D) has been retained identically at MCR 1.109(E)(5). Because this change was in effect at the time the trial court made its decision, we will subsequently refer to the rules as they appear in MCR 1.109.

Seaver's request for sanctions.  We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Patrick M. Meter